**ALLENDALE MUTUAL INSURANCE COMPANY and Factory Mutual International, Plaintiffs–Appellants,**

**v.**

**BULL DATA SYSTEMS, INCORPORATED, Zenith Data Systems France, Zenith Data Systems Europe, et al., Defendants–Appellees.**

No. 94–2752.

United States Court of Appeals, Seventh Circuit.

Submitted July 28, 1994.

Decided Aug. 19, 1994.

Robert Michael Kalec (submitted), Altheimer & Gray, Chicago, IL, Franklin M. Sachs, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ, for plaintiffs-appellants.

Bruce E. Fader, Steven C. Krane, Nancy J. Kilson, James F. Parver, Pamela L. Dreizen, Patricia J. Clarke, Proskauer, Rose, Goetz & Mendelsohn, New York City, George L. Saunders, Jr., Thomas F. Bush, Jr., Thomas A. Doyle, Saunders & Monroe, Chicago, IL, for Bull Data Systems, Inc., Zenith Data Systems France, Zenith Data Systems Europe.

Marc L. Fogelberg, Nancy L. Pionk, William M. Stevens, McBride, Baker & Coles, Chicago, IL, for Alexander & Alexander, Inc.

Before POSNER, Chief Judge, and CUMMINGS and FAIRCHILD, Circuit Judges.

POSNER, Chief Judge.

Marx once said that every great event or character in history appears twice, the first time as tragedy and the second as farce (he had in mind Napoleon and his nephew). This case bids fair to illustrate the adage. In its previous appearance before this court, we were asked to set aside an injunction against the defendants' trying to litigate before a French arbitral tribunal their dispute with the plaintiff insurance company (Allendale) over liability for the damage caused by a fire which destroyed the contents of the warehouse in France in which the defendants, collectively Groupe Bull, had stored their huge inventory of unsold computers and related goods. Allendale had brought suit in this country to establish its nonliability on the ground that the fire was due to arson committed by the defendants themselves. Groupe Bull brought a countersuit in the same court. Discovery was proceeding apace, and the date of trial was drawing near; the question was whether the defendants should, nevertheless, be allowed to pursue a parallel suit in France. The district judge thought not, and we upheld his injunction. 10 F.3d 425 (7th Cir.1993).

The most important witness to the fire—the only person inside the warehouse when it started and spread—was the nightwatchman, a Frenchman named Pascal Thomas. With the trial rapidly approaching (it is scheduled to begin on September 19), Allendale, which apparently had not tried to depose Thomas, invited him to come to the United States, at its expense, to discuss his testimony. According to the defendants, Allendale offered Mr. Thomas up to $10 million for favorable testimony, as well as trying to soften him up with an all-expenses Grand Tour of the United States and secreting him from the defendants' lawyers, who wanted to depose him. The defendants asked the district judge to order Allendale to disclose Thomas's whereabouts to them so that they could depose him, and to desist from its ex parte dealings with him. The judge issued the order requested by the defendants, and Allendale has appealed. A stay of the order being denied, Thomas was disclosed and, on July 26, deposed. At his deposition, he answered all interesting questions by pleading the Fifth Amendment. The defendants speculate that if permitted to resume ex parte contacts with Thomas, Allendale will "somehow persuade Mr. Thomas to surrender his rights and provide them with the useful 'information' that they have been trying to get from him for nearly three years." One imagines that $10 million would be a pretty powerful persuader.

■ These are lurid accusations, in fact defamatory, but it is privileged defamation, and, for all we know, true. But with that we

shall have nothing to do; we start and end with the question of our appellate jurisdiction. Section 1292(a)(1) confers appellate jurisdiction over interlocutory injunctions. An injunction is an order to do or not to do something, and the order that Allendale seeks to appeal is both: it orders Allendale to disclose Thomas's whereabouts, and it orders Allendale to stop meeting with him privately. The first part of the order is now moot, but the second is not and Allendale argues that it is an injunction and therefore appealable.

 We do not agree. It is a discovery order, and such orders, while they have the form of an injunction (an order to do or not to do something, as distinct from an award of damages or a sentence of a fine or imprisonment), are deemed not to be injunctions within the meaning of section 1292(a)(1). *Reise v. Board of Regents*, 957 F.2d 293 (7th Cir. 1992); *Aurora Bancshares v. Weston*, 777 F.2d 385, 386 (7th Cir.1985) (per curiam); *International Products Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir.1963) (Friendly, J.); *Casey v. Planned Parenthood*, 14 F.3d 848, 854 (3d Cir.1993) (dictum). Most discovery orders become moot in the course of the proceeding in which they are issued, and so do not inflict *irreparable* harm, the justification for allowing an interlocutory order to be appealed immediately, interrupting the litigation in the district court and raising the specter of multiple appeals in the same case. In the unusual case in which a discovery order does have serious, irrevocable consequences, immediate appellate review can be obtained by disobeying the order and appealing the judgment of contempt that is bound to ensue. *United States Catholic Conference v. Abortion Rights, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 2270–71, 101 L.Ed.2d 69 (1988); *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *R.R. Donnelly & Sons Co. v. FTC*, 931 F.2d 430, 432 (7th Cir.1991); *Crowder v. Sullivan*, 897 F.2d 252, 253 (7th Cir.1990) (per curiam). A final order does not lose its appealability by virtue of arising from a discovery dispute. *Aurora Bancshares Corp. v. Weston, supra*, 777 F.2d at 386. Allendale could have refused to disclose Thomas's whereabouts or stop meeting with him in secret; the district judge would have adjudged Allendale in criminal contempt of its order; and Allendale could then have appealed. Or if, as is more plausible, the order did not inflict an irreparable harm on Allendale, Allendale could have waited till the end of the case and if it lost argue on appeal from the final judgment that the order was a reversible error. The order that Allendale wants to appeal is not, as in our hypothetical case of contempt, a final order related to discovery; it is a discovery order.

Allendale cites *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992), for the proposition that discovery orders are injunctions. The case had nothing to do with discovery. The issue was not, as Allendale would have it, whether a discovery order is appealable if disobeying it would result in a judgment of contempt. It was whether the injunction sought to be appealed in that case was sufficiently definite that disobedience could have been punished as a contempt; for if not, the injunction had no coercive effect and therefore could not be appealed consistent with Article III of the Constitution, which requires a tangible stake at all stages of a lawsuit in federal court.

 Allendale works the other side of the street as well, arguing that the provisions of the Federal Rules of Civil Procedure governing discovery are not involved in this case at all, that what is at issue is "a litigant's right to investigate to support its cause, as well as a form of protected First Amendment activity." The reference to the First Amendment is not developed, and we do not see how it could be. While the First Amendment has been interpreted to protect the confidentiality of certain membership lists, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the anonymity of pamphleteers, *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960), and even the right to publish the contents of court documents, *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979); *Worrell Newspapers of Indiana, Inc. v. Westhafer*, 739 F.2d 1219, 1225 (7th Cir.1984), there is no

First Amendment right to interview a witness in private. At least we can find no case so suggesting, and we would be surprised if there were one. There is no indication that Mr. Thomas wants to comment publicly on what is undoubtedly a subject of public significance—responsibility for a hugely destructive fire allegedly caused by a group of companies controlled by the French government—and will do so only if permitted to caucus with the insurance company first.

 As for the "right to investigate," Allendale is correct that this "right" is not fully specified, regulated, or otherwise covered in the federal rules. Much pretrial investigation—such as taking a photograph in a public place, interviewing friendly witnesses, and looking up public records—goes on without reference to anything in the federal rules. But a federal district judge's authority with regard to the management of the discovery phase of a lawsuit is not limited to matters comprehensively governed by a statute or rule. This elementary principle is codified in Fed.R.Civ.P. 83, which provides that "in all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act."

Even if (which we do not for a moment believe) the judge's only additional power were to prevent circumvention of the federal rules that deal expressly with discovery, the order sought to be appealed here would be within the scope of that power, would be, therefore, a discovery order within the meaning of Fed.R.Civ.P. 37(a). If the defendants are to be believed—and that is the question on the merits, the question we cannot reach unless we have jurisdiction—Allendale was trying to prevent them from conducting an effective (or any) deposition of Thomas and to make sure that, should Thomas decide or be induced to abandon his rights under the Fifth Amendment in some subsequent deposition or at trial, he will lie on behalf of Allendale. If this is true the order is necessary to prevent the discovery process from being corrupted. Such an order is a discovery order. But the name is not important. Call it instead an order for the regulation of

the orderly procedure of the lawsuit. It still would not be an injunction. It might be a discovery order in the broad sense in which we are using the term yet still be reviewable under some other rubric, as would be the case if the judge had ordered Allendale's lawyers hauled off to prison. But the judge did not impose any sanction or issue any other form of order that might be independently appealable. The only order he issued, the only order Allendale seeks to appeal, regulates the process of gathering evidence in advance of trial.

 Some cases suggest that discovery orders which step on substantive rights, that is rights other than the right to prepare for trial, are appealable as injunctions. E.g., *Bailey v. Systems Innovation, Inc.,* 852 F.2d 93, 96–97 (3d Cir.1988); *International Products Corp. v. Koons, supra,* 325 F.2d at 406. We do not care for this as a statement of general principle, because it leaves out the essential element of irreparability of harm if an immediate appeal is not allowed. Some discovery orders do take away substantive rights in circumstances in which an immediate appeal is necessary to protect them; the cases we have cited involved "gag orders," and the assumed fragility of freedom of speech provided an argument for allowing an immediate appeal to stave off an irreparable harm. There is nothing like that here; what is more, no *plausible* substantive right of *any* sort has been shown to be infringed. The "right to investigate," whatever exactly this means, is not substantive, and the First Amendment right asserted by the defendants does not exist.

 Sometimes orders that are labeled discovery orders or are otherwise "procedural" in form grant the very relief sought by the plaintiff in bringing the suit; mislabeled, they are in actuality final orders. *Casey v. Planned Parenthood, supra,* 14 F.3d at 854; *Stricklin v. Regents,* 420 F.2d 1257, 1259 (7th Cir.1970). The order in *American Motors Corp. v. FTC,* 601 F.2d 1329, 1331 (6th Cir. 1979), for example—an order extending the return date of the FTC's subpoenas indefinitely—in effect enjoined an investigative proceeding by an administrative agency. Trying to bring its case within the gravita-

tional field of cases like *American Motors,* Allendale argues that "all other avenues to obtain the truth from Mr. Thomas have been foreclosed now that the witness has invoked the Fifth Amendment." Hardly. Allendale's lawyers and investigators can talk to Thomas until he and they are red in their faces, provided only that they permit the defendants' lawyers and investigators to be present. No doubt there would be an inhibitory effect but that would be true of any order limiting discovery. If meeting with Thomas in private is *that* important in this $100 million case, and if appellate correction of an erroneous denial of that privilege must, to be effective, be immediate rather than deferred to the appeal from the final judgment, Allendale could have gone the contempt route to obtaining immediate appellate review and in all likelihood would have done so.

The appeal is DISMISSED.