740 So.2d 1025 (1999)
STATE of Alabama and City of Gadsden
v.
PROPERTY AT 2018 RAINBOW DRIVE known as the Oasis.
1971105.
Supreme Court of Alabama.
May 28, 1999.
Rehearing Denied August 27, 1999.
*1026 Alice B. Pruett, Gadsden, for appellants.
James M. Campbell of Campbell & Hopkins, Anniston, for appellee Gene Stedham.
Clifford L. Callis, Jr., and Jay E. Stover of Callis & Stover, Rainbow City, for amicus curiae Imogene Suttle.
COOK, Justice.
The dispositive issue in this case is whether a complaint filed by the City of Gadsden, seeking, pursuant to Ala.Code 1975, § 20-2-93, the "condemnation and forfeiture" of property owned by Gary Stedham, ever invested the Etowah Circuit Court with subject-matter jurisdiction. We answer that question in the negative.
The substantive facts out of which this confiscation action arose are relatively simple. Gary Stedham owned real estate on which contraband was discovered by police officers. A criminal drug-possession charge against Stedham was presented to a grand jury, but ultimately the grand jury "no billed" the charge. For all that appears of record, Stedham will never be prosecuted for possession of the drugs seized on this occasionthe alleged offense that forms the basis of the City's complaint.
On April 23, 1996, the City of Gadsden commenced this action in the Etowah Circuit Court, seeking the "condemnation and forfeiture" of the subject property, "in accordance with Section 20-2-93, Code of Alabama, 1975." On April 17, 1997, Stedham moved to dismiss the complaint "on the ground that the City lacked statutory *1027 authority" to commence this action. On July 24, 1997, the attorney general appointed the assistant city attorney to serve as a "Deputy Attorney General ... to represent the interests of the State of Alabama and the City of Gadsden." On July 30, 1997, the City and the State jointly moved the trial court to "amend the complaint in this cause to add the State of Alabama as a party plaintiff." The trial court granted that motion.
However, on December 30, 1997, the trial court dismissed this action, stating: "The City of Gadsden, a Municipality, has no authority to file a condemnation and forfeiture action as such authority is granted only to the State pursuant to Alabama Code [1975,] Sections 20-2-93 and 28-4-286 through 28-4-290." The City and the State appealed.
The appellants begin their argument by conceding that the City "does not have statutory authority to initiate a drug related condemnation action under § 20-2-93," because, they admit, § 20-2-93 "incorporate[s] procedures set out in § 28-4-286, et seq., which specify that such an action is to be filed in the name of the State." Brief of Appellants, at 8 (emphasis added). Those sections provide in pertinent part:
§ 20-2-93:
"(a) The following are subject to forfeiture:
". . . .
"(8) All real property or fixtures used or intended to be used for the manufacture, cultivation, growth, receipt, storage, handling, distribution, or sale of any controlled substance in violation of any law of this state.
". . . .
"(h) ... Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in Sections 28-4-286 through 28-4-290...."
§ 28-4-286:
"It shall be the duty of [the district attorney] in the county or the Attorney General of the state to institute at once or cause to be instituted condemnation proceedings in the circuit court by filing a complaint in the name of the state against the property seized...."
The City and the State, however, contend that the amended complaint filed on July 30, 1997, added the State as the "real party in interest," within the meaning of Ala. R. Civ. P. 17. Consequently, they argue, any defect in the original complaint was cured by the amendment, which they insist, "relates back," pursuant to Ala. R. Civ. P. 15(c), to the date the original complaint was filed. Although they essentially concede that the City was not the real party in interest, their reliance on Rules 15(c) and 17(a) is misplaced, because this case turns not on the identity of the real party in interest, but on whether the City had standing to commence the action in the first instance.
There are fundamental differences between the principles of "real party in interest" and "standing." "`[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted.'" Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542 (1971)).
Standing, on the other hand, turns on "whether the party has been injured in fact and whether the injury is to a legally protected right." Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting) (emphasis added). See also *1028 NAACP v. Town of East Haven, 892 F.Supp. 46 (D.Conn.1995). "One has standing to bring his complaint into court `if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.'" Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974) (emphasis added).
The City suffered no injury to a "legally protected right," because, given the provisions of § 20-2-93 and § 28-4-286, it had no legal right to prosecute or to begin this action. A fortiori, it could not "vigorously" prosecute it. In fact, the City was statutorily barred from commencing or prosecuting this action; therefore, it had no "stake in the resolution of [the] complaint." Smith v. Potts, supra.
When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction. Barshop v. Medina County Underground Water Conservation District, 925 S.W.2d 618, 626 (Tex.1996) ("Standing is a necessary component of subject matter jurisdiction"). See also Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("`standing "is perhaps the most important of [the jurisdictional] doctrines"'"); National Organization for Women, Inc., v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."); Romer v. Board of County Comm'rs of the County of Pueblo, supra, 956 P.2d at 585 ("standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings") (Martinez, J., dissenting); Cotton v. Steele, 255 Neb. 892, 587 N.W.2d 693 (1999). But see Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh, 554 Pa. 249, 721 A.2d 43 (1998) (standing is not jurisdictional).
Because "[t]he lack of standing [is] a jurisdictional defect," the defect "cannot be cured nunc pro tunc back to the date when the original complaint was filed." Tyler House Apartments, Ltd., v. United States, 38 Fed. Cl. 1, 7 (Fed.Cl. 1997). In other words, a pleading purporting to amend a complaint, which complaint was filed by a party without standing, cannot relate back to the filing of the original complaint, because there is nothing "back" to which to relate. See GAIA Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 779 (Fed.Cir.1996) (assignment to Gaia Technologies, Inc., of patent and trademark rights purporting to operate nunc pro tunc to a date "prior to Gaia's filing of the ... suit" was ineffective to cure the jurisdictional defect created by Gaia's lack of standing on the date of commencement of the action), amended on rehearing on other grounds, 104 F.3d 1298 (Fed.Cir.1996); Reynolds v. United States, 748 F.2d 291, 292 (5th Cir.1984) (a complaint filed pursuant to the Federal Tort Claims Act ("FTC") before the "final denial" of the plaintiffs claim by the "appropriate Federal agency" as required by the FTC was due to be dismissed for lack of subject-matter jurisdiction, and an amended complaint filed after the "final denial" was also due to be dismissed because it could relate back only to a date on which the trial court lacked subject-matter jurisdiction).
Because the City had no standing to commence or prosecute this action, the complaint it filed on April 23, 1996, failed to invest the trial court with subject-matter jurisdiction. Therefore, the purported amendment filed on July 30, 1997, could relate back only to a time when the trial court had no jurisdiction. The trial court's order of December 30, 1997, dismissing this action was correct.[1]
*1029 This case is clearly distinguishable from Ogle v. Gordon, 706 So.2d 707 (Ala.1997). That case arose out of an automobile accident resulting in the death of Margaret Ogle. Id. at 708. On September 30, 1992, approximately four months after the accident, Anthony Ogle (1) petitioned the probate court, pursuant to Ala.Code 1975, § 43-2-42, for letters of administration for the estate of his wife; and (2) commenced an action pursuant to the Wrongful Death Act, Ala.Code 1975, § 6-5-410, which requires that such an action be commenced by the "personal representative" within two years of the death on which the action is based. 706 So.2d at 708. While the action remained pending in the circuit court, the probate court failed to issue the letters of administration until more than two years after the accident.
On the basis of Ala.Code 1975, § 43-2-831 and § 43-2-42, this Court held that the letters of administration related back to September 30, 1992, the date of the filing of the complaint. Specifically, we noted that § 43-2-831 expressly provides that "[t]he powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter" (emphasis added); and we noted that § 43-2-42 provides that, under the facts of Ogle, "[a]dministration of [the] intestate's estate must be granted to" the husband, if he is "willing to accept and [is] satisfactory to serve." 706 So.2d at 710. We explained that "a probate court has no discretion in matters concerning appointment, except as to matters of qualification." 706 So.2d at 710.
The differences between this present case and Ogle are fundamental and statutory. Whereas Anthony Ogle was statutorily designated as the proper person to commence the action in his office of personal representative, to which he was statutorily entitled, in this case the City is statutorily excluded as a litigant. By statute, the City could never commence this action. The result is the same as if a private citizenrather than the Cityhad attempted to initiate the action.
Because the City had no standing, the trial court had no subject-matter jurisdiction, and, consequently, no alternative but to dismiss the action. See Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996) ("Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the action..... Any other action taken by a court lacking subject matter jurisdiction is null and void."). The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
HOOPER, C.J., and HOUSTON, KENNEDY, SEE, and JOHNSTONE, JJ., concur.
LYONS, J., concurs in the result.
MADDOX and BROWN, JJ., dissent.
LYONS, Justice (concurring in the result).
I concur in the result, because I would affirm the trial court's judgment on the basis that the forfeiture action cannot proceed because the contraband property was seized pursuant to an improperly executed search warrant.
*1030 One of the grounds upon which the trial court predicated its dismissal was that the search was improper, under § 15-5-7, Ala. Code 1975, because the warrant was executed by officers other than those to whom it was directed. The trial court found that this defect in the execution of the warrant required the suppression of the evidence seized at the subject property.
Section 15-5-7 provides:
"A search warrant may be executed by any one of the officers to whom it is directed, but by no other person except in aid of such officer at his request, he being present and acting in its execution."
This statute has been strictly construed, and compliance with its formality has been required. See Yeager v. State, 500 So.2d 1260 (Ala.Crim.App.1986); Rivers v. State, 406 So.2d 1021 (Ala.Crim.App.1981), cert. denied, 406 So.2d 1023 (Ala.1981); see, also, United States v. Martin, 600 F.2d 1175 (5th Cir.1979) (recognizing that strict compliance with § 15-5-7 is required), overruled on other grounds, United States v. McKeever, 905 F.2d 829 (5th Cir.1990). Failure to comply with § 15-5-7 requires suppression of the evidence seized pursuant to the warrant. See Rivers, supra. Furthermore, the exclusionary rules applicable in criminal prosecutions are equally applicable in forfeiture proceedings. Nicaud v. State ex rel. Hendrix, 401 So.2d 43, 45 (Ala.1981).
In the present case, members of the Gadsden Police Department and an officer of the Alcoholic Beverage Control Board executed a search warrant authorizing a search of the subject property for illegal controlled substances. That search warrant, however, was addressed to "The Sheriff of [Etowah C]ounty." It is undisputed that the members of the Gadsden Police Department and the ABC officer who searched the subject property were not deputized members of the Etowah County Sheriffs Department. It is also undisputed that no member of the Etowah County Sheriffs Department was present and acting in the execution of the warrant. Thus, the warrant was neither executed by "any one of the officers to whom it [was] directed" nor executed by a person "in aid of such officer at his request, he being present and acting in its execution," as § 15-5-7 requires.[2] Therefore, the trial court correctly suppressed the evidence and correctly dismissed the action.
The City and the State, however, argue that § 15-5-7 provides a procedure that is not based on any particular requirement of the Fourth Amendment of the United States Constitution. They say that, because the defect in the execution of the warrant is not a violation of the Fourth Amendment, there is no reason to suppress the seized contraband.
Whether a violation of § 15-5-7 would also be a violation of the Fourth Amendment is irrelevant. Alabama can provideand by adopting § 15-5-7 apparently has providedgreater protection to its citizens through its laws than that provided by the United States Constitution. See State v. Hill, 690 So.2d 1201, 1207 n. 3 (Ala.1996). Thus, the fact that § 15-5-7 does go further than the United States Constitution is a matter for the Legislature to consider. Therefore, the argument made by the City and the State is without merit.
*1031 Last, one could argue that Rule 3.10, Ala. R.Crim. P., has modified § 15-5-7. Rule 3.10 provides, in pertinent part:
"The search warrant shall be directed to and served by a law enforcement officer, as defined by Rule 1.4(p). It shall command such officer to search, within a specified period of time not to exceed ten (10) days, the person or place named for the property specified and to bring an inventory of said property before the court issuing the warrant.... The judge or magistrate shall endorse the warrant, showing the hour, date, and the name of the law enforcement officer to whom the warrant was delivered for execution, and a copy of such warrant and the endorsement thereon shall be admissible in evidence in the courts."
(Emphasis added.) Rule 1.4(p) states:
"`Law Enforcement Officer' means an officer, employee or agent of the State of Alabama or any political subdivision thereof who is required by law to:
"(i) Maintain public order;
"(ii) Make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses; and
"(iii) Investigate the commission or suspected commission of offenses."
Therefore, Rule 3.10 does not specifically authorize the execution of a warrant by a law-enforcement officer other than the officer to whom the warrant is directed. As noted above, § 15-5-7 condemns the execution of a warrant by an officer other than the one to whom the warrant is directed. The Rules of Criminal Procedure displace statutes that conflict with the rules. See § 15-1-1, Ala.Code 1975; Ex parte Oswalt, 686 So.2d 368, 370 (Ala. 1996). However, if the Advisory Committee thought § 15-5-7 conflicted with Rule 3.10, the Committee easily could have referred to the conflict in the Committee Comments to Rule 3.10. Instead, the Comments, speaking to the statutes modified by the rule, state, "This rule is taken from and modifies Ala.Code 1975, §§ 15-5-5, 15-5-8, and 15-5-12." I am not prepared to expand on that list in the absence of any reason for thinking the omission of § 15-5-7 was an oversight.
Therefore, I would affirm the trial court's judgment on the basis that the forfeiture action cannot proceed because the contraband was seized pursuant to an improperly executed search warrant.
MADDOX, Justice (dissenting).
Although this case is not a model to be followed in filing a forfeiture action, I believe the provisions of Alabama law and this Court's rules of procedure permit this forfeiture action to proceed. I believe that the issue presented in this case requires that we construe our statutes governing forfeitures in pari materia with the Alabama Rules of Civil Procedure.
Section 20-2-93, Ala.Code 1975, contains a list of all of the items of real and personal property "are subject to forfeiture" in Alabama. That Code section states, in pertinent part:
"(a) The following are subject to forfeiture:
". . . .
"(8) All real property or fixtures used or intended to be used for the manufacture, cultivation, growth, receipt, storage, handling, distribution, or sale of any controlled substance in violation of any law of this state."
§ 20-2-93, Ala.Code 1975. It seems apparent to me that the majority would agree that had this forfeiture action been filed in the name of the State initially, then it could proceed. In view of that fact, it appears to me that the majority then incorrectly holds that the initial complaint could not be amended, pursuant to Rule 15, Ala. R. Civ. P., to name the real party in interest.
Although I must admit that Rule 1(a), Ala. R. Civ. P., states that Alabama's Rules of Civil Procedure do not govern "proceedings enumerated in Rule 81, and other exceptions stated in Rule 81," and *1032 that Rule 81 enumerates certain proceedings that are controlled by statute, including, at Rule 81(a)(12), "[f]orfeiture of contraband property," I do not believe that ends the inquiry.
The critical question is whether the provisions of the rules that permit pleadings to be amended are applicable here. I think the amendment should have been permitted, because Rule 81(a) also provides that Alabama's Rules of Civil Procedure apply to the proceedings set out in Rule 81 "to the extent that the practice in such matters is not provided by statute." (Emphasis added.)
Although Section 20-2-93(h), Ala.Code 1975, provides certain directives as to the applicable procedure, those directives should not be construed as being exclusive. Section 20-2-93(h), Ala.Code 1975, provides:
"Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in Sections 28-4-286 through 28-4-290."[3]
Neither § 20-2-93 nor §§ 28-4-286 through 28-4-290 contain provisions for amendments to complaints in condemnation proceedings. Thus, according to the clear language of Rule 81(a), Ala. R. Civ. P., the provisions of the Alabama Rules of Civil Procedure govern areas such as the amendment of complaints.
The trial court granted the City's motion to amend its complaint in order to join the State as a plaintiff. Therefore, the specific issue is not whether the trial court erred by not following the dictates of Rule 15, Ala. R. Civ. P. Instead, the issue is whether the amendment was effective to preclude dismissal of the forfeiture action. I think that it was.
As stated above, certain procedures for maintaining a forfeiture action under § 20-2-93 are governed by §§ 28-4-286 through 28-4-290. Section 28-4-286 provides that, to institute a forfeiture or condemnation action, a county officer or the state attorney general shall file "a complaint in the name of the state against the property seized ... or against the person or persons in possession" of the property. (Emphasis added.) Section 20-2-93 modifies this requirement only with regard to seizure. Section 20-2-93(b) provides:
"Property subject to forfeiture under this chapter may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property."
(Emphasis added.) Section 20-2-93(c) requires that "[i]n the event of seizure ..., proceedings under ... this section shall be instituted promptly." Neither the City nor the State has seized the subject property. Therefore, the provisions of § 20-2-93(c) do not come into play. See Reach v. State, 530 So.2d 40 (Ala.1988). With regard to § 20-2-93(b), the statute clearly does not require the City or the State to seize the property, but states only that those entities "may" seize the property.
The City does not challenge the fact that it cannot maintain a forfeiture or condemnation action in its name alone under the provisions of § 28-4-286, Ala.Code 1975, but the complaint filed by the City was amended to bring in the proper party. Could the complaint be amended? I think so.
Rule 17(a), Ala. R. Civ. P., provides:
"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; *1033 and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
Unquestionably, Alabama's Rules of Civil Procedure have been interpreted to provide for liberal amendment to complaints in certain circumstances "when justice so requires," or "upon a showing of good cause." Rule 15(a). I think that "justice" requires that the City of Gadsden be allowed to amend to add the State in this case. See English v. State ex rel. Purvis, 585 So.2d 910 (Ala.1991), where this Court upheld an amendment to a complaint even after a judgment had been entered. In English, this Court held that an amendment to a complaint is proper when a defendant has "notice of the claims against it and the allowance of the amendment in no way" prejudices the defendant. Id. at 912.
There is no dispute that the property owner had notice of possible action against his property. The amendment to the complaint only added the State as a plaintiff. It did not alter the substantive claims against the property. The property owner was never deprived of adequate notice and was never prejudiced by the amendment. Therefore, I would hold that the trial court, by allowing the City to amend the complaint to add the State as a plaintiff, effectively preserved for the State and the City the ability to prosecute the forfeiture action and carry out the intent of the Legislature to confiscate property that is being used for illegal purposes. See Durham v. State, 730 So.2d 235 (Ala.Civ.App. 1999); and City of Gadsden v. Jordan, [Ms. 2970342, July 31, 1998] ___ So.2d ___ (Ala.Civ.App.1998).
NOTES
[1] See also 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542, at 333 (1990) ("objections to standing, unlike Rule 17(a) objections, cannot be waived"). The United States Supreme Court has explained the rationale for carefully distinguishing between such concepts as standing and real party in interest, as follows:

"The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics. It rests instead on the central principle of a free society that courts have finite bounds of authority, some of constitutional origin, which exist to protect citizens from the very wrong asserted here, the excessive use of judicial power. The courts, no less than the political branches of the government, must respect the limits of their authority."
United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).
[2] The fact that the members of the Gadsden Police Department and the ABC officer were not deputized by the Etowah County Sheriff's Department distinguishes this case from Cowart v. State, 488 So.2d 497, 502 (Ala.Crim. App.1985), in which the Court of Criminal Appeals held that a warrant directed to the "Sheriff of Mobile County" was properly executed by an officer of the Mobile Police Department because the officer "had been personally deputized by the sheriff of Mobile County and had taken an oath to discharge the duties of a deputy sheriff." The fact that no member of the Etowah County Sheriff's Department was present during the search distinguishes this case from Yeager, supra, and Gamble v. State, 473 So.2d 1188 (Ala. Crim.App.1985).
[3] Subsection (h) also points out, in regard to forfeiture actions, changes in the standards and burdens of proof, and it makes provisions for service in forfeiture actions. These provisions are not relevant here.