United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 5, 1999 Decided February 4, 2000 

 No. 99-7027

 Barwood, Inc., et al., 
 Appellees

 v.

 District of Columbia, et al., 
 Appellants

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 98cv01901)

 Donna M. Murasky, Assistant Corporation Counsel, Office 
of the Corporation Counsel, argued the cause for appellants. 
With her on the briefs were Robert R. Rigsby, Interim 
Corporation Counsel, and Charles L. Reischel, Deputy Corpo-
ration Counsel.

 Stephen W. Grafman argued the cause for appellees. With 
him on the brief was A. Thomas Morris. John Marshall 
entered an appearance.

 Before: Williams, Ginsburg and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Williams.

 Williams, Circuit Judge: On June 12, 1998 the District of 
Columbia Taxicab Commission promulgated 31 D.C.M.R. 
s 828, restricting the circumstances under which suburban 
taxicabs may pick up passengers in the District and subject-
ing violators to criminal sanctions. Plaintiffs, various subur-
ban taxicab companies and some of their drivers, sought a 
temporary restraining order ("TRO") against the Commission 
and various individual defendants, to prevent them from 
enforcing s 828. They argued that the Commission lacked 
the authority to alter the existing reciprocity arrangements, 
and that reciprocity infractions are subject only to civil sanc-
tions. On July 31, 1998 the district court entered a TRO, 
which was later expanded in response to allegations that it 
had been violated. On February 16, 1999 the district court 
entered a preliminary injunction prohibiting the Commission 
from enforcing s 828, from imposing any criminal sanctions 
for reciprocity violations, or from otherwise altering the pre-
existing reciprocity arrangements. Barwood, Inc. v. District 
of Columbia, No. 98-1901 (D.D.C. Feb. 16, 1999). The Dis-
trict appealed.

 Plaintiffs pursued this injunction--and so far as appears 
the entire lawsuit--almost exclusively on the basis of viola-
tions of District of Columbia law. The original complaint 
asserted diversity jurisdiction. See 28 U.S.C. s 1332(a). La-
ter that same day, presumably upon realizing that the Dis-
trict of Columbia, like a state, is not a citizen of a state (or of 
itself) for diversity purposes, see Long v. District of Colum-
bia, 820 F.2d 409, 414 (D.C. Cir. 1987), plaintiffs filed an 
amended complaint attempting to establish federal question 
jurisdiction. To this end they added claims that defendants' 
conduct had violated "the Fourth, Fifth, and Fourteenth 
Amendments to the United States Constitution and 42 U.S.C. 
s 1983."

 Because there are no allegations of federal constitutional 
violations independent of the purported violations of District 
of Columbia law (or at any rate no such allegations for which 
plaintiffs have standing), there is no subject matter jurisdic-
tion. Accordingly, we vacate the preliminary injunction and 
remand for the district court to dismiss the complaint.

 * * *

 The District law claims around which this suit has revolved 
are somewhat complex but can be generalized as assertions 
that various agencies and individuals of the District's execu-
tive branch acted ultra vires. In the District of Columbia 
Taxicab Commission Establishment Act of 1985 (the "Taxicab 
Act" or the "Act"), D.C. Code s 40-1701 et seq., the District 
created the District of Columbia Taxicab Commission 
("D.C.T.C." or the "Commission"), and gave it "exclusive 
authority for intrastate regulation of the taxicab industry." 
Id. s 40-1704. The Act did not address the issue of taxicab 
reciprocity (i.e., the arrangements under which suburban 
taxicabs may operate within the District, and vice versa), but 
provided the Commission with the authority to "[a]dvise the 
Mayor regarding the entering, modifying, and terminating of 
reciprocal agreements respecting taxicabs with governmental 
bodies in the Washington metropolitan area." Id. 
s 40-1707(b)(1)(L). On August 13, 1987 the Commission's 
chairman issued "Administrative Order No. 4," which pur-
ported to govern the provision of taxicab service in the 
District by cabs licensed only in other jurisdictions.

 On June 12, 1998 the District of Columbia Taxicab Commis-
sion promulgated a new provision to the District of Columbia 
Municipal Regulations, 31 D.C.M.R. s 828, limiting the scope 
of taxicab reciprocity with neighboring jurisdictions. The 
regulation provided penalties in the form of fines of up to 
$300 and imprisonment of up to 90 days.

 Plaintiffs, suburban taxicab drivers and their companies, 
filed a complaint in the district court. They named as 
defendants the District, the District Chief of Police, and the 
Taxicab Commissioners. The complaint--and all successive 

amended complaints--specified that the various individual 
defendants were sued "in their official capacities." The com-
plaint alleged that only the Mayor, not the Commission, 
possessed the exclusive authority "to change, modify or alter 
applicable reciprocity arrangements in the District of Colum-
bia," Joint Appendix 186, and that the provision of civil 
penalties by the Taxicab Act, D.C. Code s 40-1719(a), was 
exclusive, negating the purported penalties under s 828.

 In response to a TRO issued by the district court, the 
chairman of the D.C.T.C. issued an order rescinding Adminis-
trative Order No. 4--the 1987 internal agency memorandum 
setting forth the District's policy of reciprocity. Further, the 
Mayor delegated to the Commission his authority to alter 
reciprocity agreements. Soon thereafter the Commission 
rescinded existing s 828 and, under the Mayor's delegation, 
approved an identical rule as an "emergency" s 828.

 Plaintiffs filed a contempt motion, arguing that the Com-
mission's action violated the TRO. They also alleged that 
Harry Silverman, a Commissioner of the D.C.T.C., should be 
found in criminal contempt for deliberately running his car 
into a taxicab owned by one of the plaintiffs in an attempt to 
arrest the driver pursuant to s 828. Plaintiffs filed a Second 
Amended Complaint, expanding their claims to encompass 
the alleged infractions by the Commission and by Silverman. 
The district court followed up with TROs broader than the 
initial one, and on February 16, 1999 issued the preliminary 
injunction now on appeal. It enjoined the defendants from: 
"(1) enforcing 31 D.C.M.R. s 828, or any portion thereof; and 
(2) taking any action to effectuate any arrests or other 
criminal penal actions against taxicab drivers in connection 
with alleged reciprocity violations." In addition, the D.C.T.C. 
was enjoined from: "(1) taking any action ... in reliance 
upon any purported mayoral delegation regarding reciprocity; 
and (2) seeking to enact, modify, or repeal any regulations, 
administrative orders, or other administrative actions that 
have the effect of limiting, modifying, repealing, or otherwise 
altering reciprocity."

 * * *

 We may dispense rapidly with jurisdictional theories ad-
vanced in or before oral argument. Plaintiffs say that if their 
District law theory is correct, the District lacks the authority 
to arrest taxicab drivers for reciprocity violations; thus any 
arrest is illegal and in violation of the Fourth Amendment. 
The argument has an initial plausibility: if an arrest without 
probable cause violates the Fourth Amendment, then surely 
one for which no cause could possibly exist must do so. If 
correct, of course, the argument would transform a wide class 
of state law claims into federal ones. Every arrest claimed to 
violate state law would entail an ancillary federal claim, even 
though the state law attack rested (as here) on state law 
theories having no connection whatever with the policies 
underlying the Fourth Amendment.

 Cases such as Dombrowski v. Pfister, 380 U.S. 479 (1965), 
and Steffel v. Thompson, 415 U.S. 452 (1974), both cited by 
plaintiffs, allow anticipatory relief against threatened state 
law enforcement; but these cases turned on that enforce-
ment's deterrent threat to plaintiffs' constitutional, in particu-
lar First Amendment, rights. (In Dombrowski, moreover, 
enforcement was alleged to be in bad faith, "only to discour-
age appellants' civil rights activities." 380 U.S. at 490.) 
Here plaintiffs make no parallel allegation that the District's 
arguably ultra vires taxicab regulations burden or chill any 
independent federal constitutional rights. Mere inconsistency 
with state, or even federal, law will not suffice to create a 
Fourth Amendment cause of action (unless, of course, the 
inconsistency is with the Fourth Amendment itself).

 Plaintiffs also argue that any arrest under the disputed 
provisions will be a violation of the Fifth and Fourteenth 
Amendments, apparently asserting a due process theory. 
Again this is a state law claim in federal garb. But "the fact 
of a state law violation does not resolve whether a plaintiff 
has been deprived of due process." Committee of U.S. Citi-
zens Living in Nicaragua v. Reagan, 859 F.2d 929, 944 (D.C. 
Cir. 1988); see also Archie v. City of Racine, 847 F.2d 1211, 

1217 (7th Cir. 1988) (en banc) ("A state ought to follow its 
law, but to treat a violation of state law as a violation of the 
Constitution is to make the federal government the enforcer 
of state law. State rather than federal courts are the appro-
priate institutions to enforce state rules."). A due process 
claim rests on "the manner in which the violation occurs as 
well as its consequences." Committee of U.S. Citizens, 859 
F.2d at 944; see also Wolff v. McDonnell, 418 U.S. 539, 558 
(1974) ("The touchstone of due process is protection of the 
individual against arbitrary action of government."); United 
States ex rel. Hoover v. Franzen, 669 F.2d 433, 446 n.28 (7th 
Cir. 1982) ("In order for the violation of state law to rise to 
the level of a federal constitutional violation, it must be 
alleged that the violation was the result of arbitrary state 
action."). But plaintiffs point to nothing in the record that 
would support a claim that the Commission acted arbitrarily 
or in a manner otherwise violative of due process, except to 
argue that the regulation violates state law. That is not 
enough.

 Similarly, it is not enough that in their amended complaints 
plaintiffs ask that the Commission should be held in civil 
contempt for violating the district court's TRO. To secure 
jurisdiction by this means would be a remarkable feat of 
bootstrapping. But just as a court without jurisdiction over 
an underlying case has no jurisdiction to issue a subpoena 
(unless issued in aid of determining jurisdiction), or to enforce 
it by civil contempt, United States Catholic Conference v. 
Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988); cf. 
Barry v. United States, 865 F.2d 1317, 1322 (D.C. Cir. 1989) 
(finding that there is no such thing as a cause of action for 
civil contempt, a device used simply to secure compliance with 
a court order), so too a court without jurisdiction over an 
underlying case cannot issue a TRO, or enforce it by civil 
contempt.

 The possibility that the U.S. Attorney may pursue a crimi-
nal contempt claim against Silverman or other defendants, 
see United States Catholic Conference, 487 U.S. at 78-79, of 
course, neither provides plaintiffs with a cause of action nor 
supplies jurisdiction for their civil suit.

 In a supplemental brief filed after oral argument, the 
plaintiffs have sought to turn their allegations against Com-
missioner Silverman into an independent federal claim, and 
then, in a marvelous twist, to suggest that jurisdiction over 
the other claims might survive as supplementary claims un-
der 28 U.S.C. s 1367. This will not work.

 Plaintiffs say that Silverman's conduct independently creat-
ed a federal cause of action. The Second Amended Com-
plaint alleges that he "intentionally collided his vehicle into a 
taxicab" of one of the plaintiff companies, that the intentional 
collision represented a battery, that Silverman acted under 
color of state law, and thereby violated the court's TRO, and 
that therefore he should be held in criminal contempt. Sec-
ond Amended Complaint, pp 31-35. The complaint goes on to 
say that Silverman's conduct placed the plaintiff cab company 
"in jeopardy of unreasonable government action, ... in viola-
tion of the Fourth, Fifth, and Fourteenth Amendments ... 
and 42 U.S.C. s 1983." Id. p 47.

 We will assume for these purposes that Silverman was 
acting under color of state law,1 and that absent unusual 
circumstances the deliberate use of a car to ram another, to 
enforce a cab regulation, violates the federal constitution as 
an unreasonable use of force. But recall that the plaintiffs' 
suit is only against the District, the individuals being named 
only in their official capacity. Indeed, when the plaintiffs 
sought contempt proceedings against Silverman, the district 
court noted "that Defendants do not represent Mr. Silverman, 
and that Mr. Silverman has never appeared in any of these 
proceedings." Memorandum Opinion, Oct. 30, 1998, at 6 n.3.

 Insofar as plaintiffs seek injunctive relief against further 
use of cars as battering rams by the District, they have failed 
even remotely to allege facts essential for standing; there is 
no assertion of any fact giving reason to believe that Silver-
man or any other District officer or employee will again use 
this innovative law enforcement technique against any of the 

__________
 1 The District, however, cites D.C. Code Ann. s 40-1722 (1998) 
for the proposition that the D.C. Council has transferred all taxicab 
enforcement responsibilities to the Metropolitan Police Department.

plaintiffs' cabs. City of Los Angeles v. Lyons, 461 U.S. 95, 
110 (1983) (finding that plaintiff who did not "face[ ] a real 
and immediate threat of again being illegally choked" pursu-
ant to the city's policy with respect to the use of chokeholds 
did not have standing to bring a claim for injunctive relief 
against the city).

 Although plaintiffs also seek damages, they have never 
alleged that the District has adopted a "policy or custom" of 
enforcing its taxi regulations by means of crashing autos into 
each other, as would be required for municipal liability under 
s 1983. Monell v. New York City Dept. of Social Servs., 436 
U.S. 658, 694 (1978). While of course an omission in substan-
tive allegations is not inherently a jurisdictional defect, here 
the question is whether plaintiffs' references to the alleged 
Silverman episode ever purported to invoke federal question 
jurisdiction. In fact those references are most naturally 
understood exclusively as the bases for plaintiffs' requests for 
criminal contempt remedies, see Second Amended Complaint 
at WW 31-35, and for their jurisdictionally defective request for 
injunctive relief (id. p 47). Under the most reasonable read-
ing, the allegation against Commissioner Silverman does not 
form a basis for plaintiffs' claim for damages, and accordingly 
the successive complaints altogether fail to allege a federal 
claim.

 Of course the alleged ramming may in fact afford the 
specific cab company and driver a good s 1983 claim against 
Silverman. They are at liberty to try such a suit. If, 
however, they should seek to combine that claim with ones 
dependent on the District law issues which have hitherto 
consumed the time of the district court, invoking as they have 
here at the last minute the "supplemental jurisdiction" provi-
sion of 28 U.S.C. s 1367, allowance of such supplemental 
jurisdiction would either be improper for want of a "common 
nucleus of operative fact," United Mine Workers v. Gibbs, 383 
U.S. 715, 725 (1966); see also Doe by Fein v. District of 
Columbia, 93 F.3d 861, 871 (D.C. Cir. 1996), or be an abuse of 
discretion given that the District law issues so clearly "sub-
stantially predominate[ ] over the claim or claims over which 

the district court has original jurisdiction," 28 U.S.C. 
s 1367(c)(2).

 The preliminary injunction is vacated and the case remand-
ed for the district court to dismiss the complaint.

 So ordered.