**EAST END TAXI SERVICES, INC.**

v.

**VIRGIN ISLANDS TAXI ASSOCIATION, INC., (D.C.3–06–cv–00146).**

**Virgin Islands Port Authority**

v.

**Virgin Islands Taxi Association, Inc. (D.C.3–06–cv–00147).**

**CBI Acquisitions, LLC, dba Caneel Bay Resort**

v.

**Virgin Islands Taxi Association, Inc. (D.C.3–06–cv–00148).**

**Ritz–Carlton Virgin Islands, Inc.**

v.

**Virgin Islands Taxi Association, Inc. (D.C.3–06–cv–00151).**

**Brad Jencks**

v.

**Virgin Islands Taxi, Association, Inc. (D.C.3–06–cv–00152).**

**Virgin Islands Taxi Association, Inc., Appellant.**

**No. 08–1602.**

United States Court of Appeals, Third Circuit.

Submitted pursuant to Third Circuit LAR 34.1(a) Dec. 13, 2010.

Opinion filed: Jan. 12, 2011.

---

Charles E. Engeman, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, Alan D. Smith, Esq., Hodge & Francois, St. Thomas, USVI, for Plaintiff–Appellee.

Henry V. Carr, III, Esq., Virgin Islands Port Authority, Terri Griffiths, Esq., Charlotte Amalie, St. Thomas, USVI, Richard A. Olderman, Esq., Williams & Connolly, Kenneth C. Smurzynski, Esq., Washington, DC, Lee J. Rohn, Esq., Law Office of Rohn & Cameron, Christiansted, St. Croix USVI, for Defendant–Appellee.

Before: McKEE, Chief Judge,
FUENTES and SMITH, Circuit Judges.

## OPINION

McKEE, Chief Judge.

The Virgin Islands Taxi Association, Inc., ("VITA") appeals a decision of the Appellate Division of the District Court of the Virgin Islands reversing and vacating contempt sanctions imposed by the Superior Court. The decision of the Appellate Division also vacated the Superior Court's factual findings and remanded for further proceedings. For the reasons that follow, we will dismiss the VITA's appeal for lack of appellate jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

The Virgin Islands Port Authority ("Port Authority") is a semi-autonomous governmental agency that owns and operates, *inter alia*, the Cyril E. King Airport on St. Thomas. On December 28, 1986, the Virgin Islands Legislature enacted Act No. 5231, which gave VITA an exclusive franchise to operate a public taxicab service from the Airport. However, the franchise did not extend to those leaving the Airport by:

a motor vehicle owned, operated or utilized by a tour agent in the transportation of passengers traveling on a prepaid or packaged tour, which has a minimum price of $50 and includes either lodging or transportation on an ocean common carrier; provided that transportation from the terminal facility is part of the overall transportation arranged for in the prepaid or packaged tour.

Act No. 5231 at § 1(e). The franchise was granted for a ten year period and was renewable, at the option of the parties, for an additional ten year period.

The Port Authority thereafter promulgated regulations interpreting the Act, including the requirements for vouchers that would allow a party other than the VITA to pick up passengers at the Airport who were traveling on a prepaid or packaged tour.

On February 12, 1997, the VITA filed an action in the Territorial Court (now Superior Court), seeking declaratory and injunctive relief, as well as damages. VITA alleged that the Port Authority, the Ritz–Carlton Virgin Islands, Inc., East End Taxi Services, Inc., and Caneel Bay Resort (later, "CBI Acquisitions") had violated the taxi franchise. On March 10, 1997, following a hearing, the court issued its memorandum opinion granting a preliminary injunction. *Virgin Islands Taxi Assoc., Inc. v. Virgin Islands Port Authority,* 1997 WL 143960 (Terr.Ct. Mar. 10, 1997). The Appellate Division thereafter affirmed. *Virgin Islands Port Authority v. Virgin Islands Taxi Assoc.,* 979 F.Supp. 344 (D.Virgin Islands 1997).

The preliminary injunction never became permanent and years passed, apparently without any problems. However, on May 12, 2004, the VITA alleged that East End Taxi, Ritz–Carlton and Caneel Bay continued to use improper vouchers to pick up guests at the Airport. The VITA moved for a contempt order against the Port Authority (but not the other defendants) contending that the VITA failed to have the other defendants comply with the 1997 preliminary injunction.

On August 3, 2005, the Superior Court held the Port Authority in contempt for violating the March 10, 1997, preliminary injunction, and instructed all the defendants to "forthwith cease and desist from operating in a manner contrary to the statutory requirements of Act 5231."

On June 13, 2006, based on its construction of the Act, the court found the defendants in contempt of the 1997 preliminary injunction. The court ordered the Port Authority, East End, the Ritz–Carlton and Caneel Bay to each pay "the sum of $1,000 per day effective March 1, 2006, until such time as they comply with the Court's Preliminary Injunction, and Order dated August 3, 2005." The court further ordered the Port Authority to pay an additional $8,135.00 "as retroactive sanctions with respect to the Court's August 3, 2005 Order."

Immediately following the court's order, the Ritz–Carlton stopped providing its prepaid guests transportation from the airport. It notified the court of its action by filing a Notice of Compliance on June 16, 2006. That same day, the VITA filed a Motion for Contempt Finding. The court, on July 31, 2006, issued a scheduling order setting a hearing on VITA's contempt motion for September 7, 2006. The order stated that it was to be personally served on Brad Jencks, the Ritz–Carlton's General Manager. However, the order did not state that Jencks was required to personally appear at the hearing. And, no subpoena was issued to Jencks requiring that he personally attend the hearing.

At the September 7, 2006, hearing, the court focused on whether the defendants continued to be in contempt after its June 13, 2006, decision and order. The court

held that the Port Authority continued to be in contempt. The court found that the Ritz–Carlton was not in contempt because the Ritz–Carlton had stopped transporting its guests from the Airport since June 16, 2006. However, the court ordered the Ritz–Carlton and the other defendants to pay the earlier assessed sanctions in full within two business days, or face the arrest of their personnel. The payments were retroactive to March 1, 2006. The court also issued a bench warrant for the arrest of Jencks, who was not in the Virgin Islands and, therefore, had not appeared at the hearing. The bench warrant stated that Jencks had been found in contempt for failing to appear at the September 7, 2006, hearing.

All of the defendants took interlocutory appeals to the Appellate Division of the District Court. They also filed a motion for an emergency stay pending appeal. On September 11, 2006, the Appellate Division granted the stay. Jencks, a nonparty, also appealed and moved for a stay of execution of the bench warrant, which the Appellate Division also granted.

On February 6, 2008, the Appellate Division held that it had jurisdiction over the defendants' appeals and Jencks' appeal seeking review of the contempt orders. *East End Taxi Services v. Virgin Islands Taxi Assoc.*, 2008 WL 570948 at *7–12 (D.Virgin Islands Feb. 6, 2008). It then reversed the contempt findings against the defendants and Jencks. *Id.* at *14–16. Finally, the Appellate Division found that the record evidence was insufficient to demonstrate that VITA's franchise had been renewed in 1997. *Id.* at *12–14. Therefore, it remanded to the Superior Court for that court to determine if VITA's franchise was renewed and remains in effect. The court explained:

> [T]he evidence in the record is insufficient to support the existence of a valid renewal of the franchise granted in Act

5231. If the franchise was not properly renewed, then the appellants could not have been held in contempt for violating the March 10, 1997, preliminary injunction and the August 3, 2005, order, which incorporated the provisions of Act. 5231. It is, therefore, incumbent upon the Superior Court to address the issue of franchise renewal as a threshold matter upon remand.

*Id.* at *14.

VITA then filed this appeal.

## II. DISCUSSION

■ "[I]t is 48 U.S.C. § 1613a(c), not 28 U.S.C. § 1291, that confers jurisdiction on this Court over appeals from the Appellate Division." *See Gov't of the Virgin Islands v. Hodge*, 359 F.3d 312, 317 (3d Cir.2004). However, "this distinction is only technical—our cases have uniformly held that 48 U.S.C. § 1613a(c) has the same requirements for appealability as 28 U.S.C. § 1291." *Id.* (citing cases). We must determine whether the Appellate Division's order, vacating and remanding this matter was a final decision under 48 U.S.C. § 1613a(c). Clearly, it is not a final decision for two reasons. Remand orders are not final orders under 48 U.S.C. § 1613a(c). *See In re Alison*, 837 F.2d 619 (3d Cir.1988); *Ortiz v. Dodge*, 126 F.3d 545 (3d Cir.1997). Second, the appeals of the defendants and Jencks to the Appellate Division were interlocutory. Here, the VITA is asking us to reconsider an interlocutory order of the Appellate Division. However,

> in view of the finality policy of 28 U.S.C. § 1291 and 48 U.S.C. § 1613a(c), this is something we do not generally engage in (absent specific statutory authorization). Such statutory authorization comes from Congress. *See* U.S. Const. Art III. § 1 ("The judicial Power of the United States shall be vested in . . . such inferi-

or Courts as the Congress may from time to time ordain and establish."). If we were to blithely take jurisdiction over appeals of decisions that the Appellate Division rendered on interlocutory appeal, we would in practice be allowing our jurisdiction to expand based on the Virgin Islands Legislature's exercise of its authority, under 48 U.S.C. § 1613a(a), to determine the appellate jurisdiction of the Appellate Division. Of course, the scheme in § 1613a means that, for a Territorial Court case to appear on our docket on appeal, it is *necessary* that the Virgin Islands Legislature confer intermediate appellate jurisdiction on the Appellate Division; but it does not follow that such a jurisdictional statute is *sufficient* to confer jurisdiction, in turn, on this Court. Hence we decline to conclude that in enacting § 1613a Congress intended to cede to the Virgin Islands Legislature such control over this Court's jurisdiction.

Thus, we hold that the Appellate Division's decision is not a "final decision" in the most common sense under 48 U.S.C. § 1613a(c), and therefore this Court does not have appellate jurisdiction in the normal sense.

*Hodge,* 359 F.3d at 318–19 (footnote omitted) (emphasis in original).

Because the order of the Appellate Division was not a final order, we have no appellate jurisdiction over the VITA's appeal. Accordingly, we will dismiss the VITA's appeal.

■ However, although we have no jurisdiction to review the merits of the Appellate Division's decision, we do have jurisdiction to review the limited question of the Appellate Division's determination of its own jurisdiction. *Hodge,* 359 F.3d at 320–21.

■ It is clear that the Appellate Division had jurisdiction to hear Jencks' inter-

locutory appeal. A contempt order against a non-party, whether criminal or civil in nature, is immediately appealable. *See United States Catholic Conf. v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

■ It is also clear that the Appellate Division had jurisdiction to hear the defendants' interlocutory appeals because criminal contempt sanctions are considered final and appealable in pending actions by parties and non-parties. *See Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers,* 552 F.2d 498, 501 (3d Cir.1977) (a non-party may appeal an order of criminal contempt arising out of an action under 28 U.S.C. § 1291); *Carbon Fuel Co. v. United Mine Workers of Am.,* 517 F.2d 1348, 1349 (4th Cir.1975) (reasoning that a party may immediately appeal a criminal contempt citation in a pending action because "criminal contempt proceedings are independent of the main action and any conviction therein is a final order and appealable"); *IBM Corp. v. United States,* 493 F.2d 112, 114 (2d Cir.1973) ("An order finding a party in criminal contempt is appealable.").

■ Here, the fines imposed on the defendants were retrospective and thus could not be purged; they were ordered paid into the court registry; and they were not based on any factual determination of damages. Clearly, the fines imposed meet the definition of criminal contempt sanctions. *See Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827–28, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Hicks v. Feiock,* 485 U.S. 624, 632–38, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Thus, the Appellate Division had jurisdiction over the defendants' interlocutory appeals.

### III. CONCLUSION

For all of the above reasons, we will dismiss the VITA's appeal for lack of appellate jurisdiction.