# IN RE: KENTH W. ROGERS, Appellant

S. Ct. Civil No. 2010-0093

Supreme Court of the Virgin Islands

February 27, 2012

327

KENTH W. ROGERS, ESQ.[1], St. Thomas, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 27, 2012)

HODGE, C.J. Kenth W. Rogers, Esq., appeals from two Superior Court orders holding him in contempt of court. For the reasons that follow, we affirm.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

Appellant Kenth W. Rogers, Esq., served as counsel in two matters before the Family Division of the Superior Court of the Virgin Islands, and was found in contempt of court in each case, which gives rise to the matter before us. In the first case,[2] Rogers represented petitioner Aubrey Walters. In the second case,[3] he represented petitioner Louinel Malbranche.

### A. *The Walters Case*

On April 21, 2005, Aubrey Walters filed a petition for divorce from his wife, Elvera Farrell-Walters, in the Family Division of the Superior Court of the Virgin Islands. Kenth Rogers first entered his appearance for Aubrey Walters on May 17, 2006,[4] and the same day, he filed a Motion to Amend the Complaint. The Honorable Audrey L. Thomas was assigned to the case on October 26, 2006.[5] On July 23, 2010, Judge Thomas issued

---

[1] Appellant Kenth Rogers appeared in the cases below as an attorney to two parties. However, after the Notices of Appeal in these cases were filed, Rogers' license to practice law in the Territory was administratively suspended, and to date the suspension has not been lifted. *In re Automatic Suspension of Rogers*, S.Ct. BA. No. 2011-0123 (Order July 21, 2011). Until his suspension, Rogers practiced law from The Law Offices of Kenth W. Rogers, P.C.

[2] *Aubrey Walters v. Elvera Farrell-Walters*, ST-05-DI-83, filed on April 21, 2005.

[3] *Louinel Malbranche v. Jacqueline Denise Dawson*, ST-05-DI-169, filed on August 31, 2005.

[4] Rogers represents to this Court that he entered his appearance on May 17, 2005, rather than 2006. However, the certified docket sheets indicate that it was 2006, so the discrepancy appears to be a typographical error by Rogers.

[5] Rogers states that the Judge Thomas was assigned on May 31, 2006. Again, the certified docket sheets demonstrate that this is Rogers' error.

an order setting the matter down for a scheduling conference on September 9, 2010.[6] (App. 57-59). A month after that order, and before the scheduling conference occurred, Rogers filed on August 23, 2010, a "Motion to Deem Motion Pursuant to FRCP Rule 41(c) for Dismissal of Counterclaim, with Prejudice, Conceded." (App. 60-61.) In that Motion, Rogers sought to have the court deem conceded a Motion to Dismiss that he filed on the same day, August 23, which he asserted that he mailed to respondent Elvera[7] Walters on July 15, 2010. A week later, on September 1, 2010, Rogers filed a "Request for Ruling on FRCP 41(c) Dispositive Motion, Conversion of Calendar Call, if Necessary, to Hearing on Merits," asking the court to decide the Rule 41 Motion or to convert the hearing to a hearing on the merits. (App. 65-66.)

At 8:40 a.m. on September 9, 2010, the day of the scheduling conference, Rogers filed a "Motion for Disqualification of Judge Hollar," the text of which actually requested the disqualification of Judge Thomas, though it referred in broad and condemnatory language to both judges. (App. 67-69.) At the same time, he filed a "Request for Administrative Relief Pursuant to 5 V.I.C. 74b and Rule 14 of the Rules of the Superior Court." (App. 71-72.) In that motion, he noted that he had outstanding motions to dismiss and to amend the complaint. He also alleged that the court was engaging in ex parte communications with the respondent.

Although Rogers filed these motions with the Superior Court on September 9, he did not attend the scheduling conference that morning. Consequently, on October 13, Judge Thomas issued an order directing Rogers to appear on October 21 and show cause why he should not be held in contempt of court. (App. 86-87.) However, on October 21, Rogers was again absent. He did manage, though, to file a Petition for Mandamus in this Court on October 21 at 8:59 a.m.[8] On October 25, the court issued an order finding Rogers in contempt of court pursuant to section 581(3) of title 14 of the Virgin Islands Code. (App. 81-82.) The order directed Rogers to immediately pay a $25 fine into the registry of the court and

---

[6] The Notice of Entry accompanying the Order shows that it was issued to Rogers on July 23.

[7] Rogers refers to the respondent as "Elvira" in the Notice of Appeal. However, because the Superior Court's certified docket sheets and orders refer to "Elvera," we will use that spelling of the respondent's name.

[8] The Petition for Writ of Mandamus was denied on October 26, 2010. *See In re Rogers*, S. Ct. Civ. No. 2010-0080, slip op. at 4 (V.I. Oct. 26, 2010).

scheduled a further show cause hearing for October 28 at 9:45 a.m. (*Id.*) The order provided that if Rogers failed to appear on that day, he would be assessed a fine of $25 per day from October 22 to October 28, to be paid to the registry of the court. (*Id.*) Rogers did not appear on October 28, and the court again found him in contempt, but stated that it would give him another opportunity to show cause.[9]

On November 4, the court issued a written order directing Rogers to appear on November 18 and show cause why he should not be held in contempt for his failure to appear at the September 9 scheduling conference and the October 28 show cause hearing. Rogers did not appear at the 9:30 a.m. show cause hearing on November 18. Instead, at about 9:50 a.m. on that morning he filed a written Response to Order to Show Cause. The written response did not indicate any reasons for his failure to appear on October 21 or October 28. Instead, it merely stated that a petition for writ of mandamus was filed on October 21.[10] The remainder of the response addresses the purported reasons why Judge Thomas should "be disqualified as legal counsel."[11] Rogers also filed a Notice of Appeal along with the written response. At the November 18 hearing, Judge Thomas found Rogers in contempt of court and fined him $500.00 to be paid immediately into the registry of the court. He filed an appeal with this Court on November 24, 2010.

## B. *The Malbranche Case*

Rogers filed a complaint in this divorce matter on behalf of Louinel Malbranche on August 31, 2005. After the respondent filed an Answer and Counterclaim on December 14, 2005, Rogers filed a Motion for Entry of Default on February 10, 2006, and a Motion for Default Judgment on

---

[9] Unfortunately, Rogers did not include a copy of the transcript from the October 28 hearing, so this Court must rely on the summary of the proceedings listed on the certified docket sheet.

[10] The November 18 response does not acknowledge that this Court had denied the mandamus petition some three weeks before his response was filed.

[11] Apparently, the response serves as an exposition of the arguments raised in the September 9 Motion for Disqualification. However, much of the Request is unclear, as exemplified by this sentence: "There is one salient point that is being missed, other than the Padilla v. Padilla divorce case that had to be filed on St. Thomas, Attorney Kenth Rogers has not filed one divorce in the Division of St. Thomas and St. John contempt proceeding is 'uniquely [] liable to abuse.' *International Union United Mine Workers v. Bagwell*, 512 U.S. 821, 827-28, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)." (App. 102.)

March 30, 2006. He requested a hearing on his motion and a hearing was scheduled for September 20, 2006, but was subsequently continued. On September 18, 2006, Rogers moved to withdraw as counsel, but the court denied that motion on December 11, 2006.[12] The certified docket sheet indicates that the December 11 order was sent to Rogers; however, on January 9, 2007, it was returned to the court as "unclaimed." On December 12, 2006, the matter was re-assigned to Judge Thomas. Thereafter, the matter sat with no activity until, on March 26, 2009, the respondent filed a Motion for Summary Judgment. The court denied the motion on December 2, 2009. On July 23, 2010, the court issued an order scheduling the matter for a status conference on September 9, 2010, at 10:00 a.m.[13] (App. 57-59.)

On September 1, 2010, Rogers filed a "Request for Ruling on Motion to Withdraw Prior to September 9, 2010 Calendar Call." On September 9, although he was required to appear for hearings for both the *Walters* and *Malbranche* matters, he did not appear in court. Instead, at 8:40 a.m. that morning he filed a "Request for Administrative Relief Pursuant to 4 V.I.C. 74b and Rule 14 of the Rules of the Superior Court." The Request indicated that Rogers was still awaiting a ruling on his Motion to Withdraw, which, he alleged, "the court has totally ignored."[14] (App. 73.) He further stated that, "Plaintiff's counsel has been unable to contact [his client] for more than three years and the calendar call cannot address the important issue, which is, plaintiff's right to new counsel or the right to proceed pro se."[15] (*Id.*) The remainder of the Request relates reasons why Rogers thought Judge Thomas ought to recuse herself.[16] (App. 7576.) In light of what Rogers incorrectly believed to be the court's failure to rule

---

[12] Rogers did not provide a copy of the order denying his motion, so this Court is unable to discern the basis for the denial.

[13] The Notice of Entry of Order indicates that a copy of the order was directed to Rogers.

[14] In the three years since the Motion to Withdraw had been filed, Rogers apparently never took the opportunity to contact the court and determine its disposition, or review the docket entry sheets to apprise himself of the status of his case.

[15] Rogers does not attempt to explain how he lost contact with his client. Notably, Rule 1.4 of the ABA Rules of Professional Conduct — adopted by this Court in Rule 203(a) of the Supreme Court Rules — requires attorneys to maintain contact with their clients and keep them "reasonably informed about the status of the matter."

[16] It appears that pages are missing from the record, so it is not clear whether Rogers provided other reasons for his Request.

on the motion to withdraw, he concluded that to "schedule a calendar call is totally outrageous," although he did not explain why it would be outrageous or why he could not appear before the court at the hearing to apprise it of the status of his communications (or lack thereof) with his client. (App. 75-76.)[17]

On September 10, the court directed Rogers and opposing counsel to submit before September 24 a one-page memorandum showing why an order to show cause should not issue for their failure to appear at the September 9 conference. Rogers filed a memorandum, but it is unclear whether it was filed in the *Malbranche* or *Walters* case.[18] Because Rogers did not include the Reply in his appendix, we are unaware of its contents.

On October 13, the court issued an order to Rogers to appear on October 21 at 10:00 a.m. to show cause why he should not be held in contempt for failing to appear at the September 9 hearing.[19] However, on October 21, Rogers failed to appear at the show cause hearing but instead filed a Petition for Writ of Mandamus with this Court.[20] At the show cause hearing, Judge Thomas ruled from the bench that Rogers was in contempt of court. Judge Thomas indicated that it had been her intention at the hearing to address some of the pending motions Rogers had filed, but did not do so as he was absent. The judge also found that the reasons Rogers provided in his written response to the order to show cause were not satisfactory. The ruling was embodied in an order entered on October 25, which largely replicates the October 25 order issued in the *Walters* case, and includes a $25 per diem fine if Rogers did not appear on October 28 at 9:45 a.m. On October 28, Rogers again failed to appear, and he was again found to be in contempt. On November 4, an order was entered scheduling the matter for another show cause hearing on November 18.

---

[17] It is unclear if the respondent ever received a copy of the motion, as the certificate of service indicates that it was sent to Elvera Walters, the respondent in Rogers' *other* divorce case.

[18] At the October 21 hearing, Judge Thomas stated that Rogers did not file any memorandum in the *Malbranche* case, but did file one in *Walters*. (App. 22.) The certified docket sheets in the *Malbranche* case, however, show that on September 16, Rogers filed a reply in the *Malbranche* case, but not in the *Walters* case.

[19] The Notice of Entry of that order indicates that a copy of it was directed to Rogers. In addition, during the October 21 hearing, Judge Thomas stated that Rogers had signed for the order on October 14, indicating that he received it.

[20] As stated in note 7, *supra*, the Petition for Mandamus was denied by this Court on October 26, 2010.

Instead of appearing on November 18, Rogers filed a Notice of Appeal and a Response to the Order to Show Cause. Because he failed to appear, he was again held in contempt and was fined $500.00 to be paid immediately into the registry of the court. He filed his appeal in the *Malbranche* case on November 24, 2010.

On December 1, 2010, this Court consolidated the appeals of the contempt orders in both the *Walters* and *Malbranche* cases into this matter.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ ■ Before addressing the merits of this matter, this Court must satisfy itself of its own jurisdiction. *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.,* 50 V.I. 276, 279 (V.I. 2008). There is no specific Virgin Islands statute explicitly providing that contempt orders issued against a non-party are immediately appealable.[21] However, as we stated in *People v. Pratt,* when the language of a federal statute and that of our local statute are very similar, federal case law may be instructive in interpreting the local law. 50 V.I. 318, 323 (V.I. 2008). Here, section 1291 of title 28 of the United States Code empowers federal appellate courts to hear appeals from "all final decisions" of lower courts. 28 U.S.C. § 1291 (2006 & Supp. IV 2010). The federal courts have interpreted this statute to mean that contempt orders, whether civil or criminal in nature, are immediately appealable if they are issued against a non-party. *East End Taxi Servs. v. Virgin Islands Taxi Assoc., Inc.,* 411 Fed. Appx. 495, 499 (3d Cir. 2011) (unpublished) (citing *United States Catholic Conf. v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 76, 108 S. Ct. 2268, 101 L. Ed. 2d 69 (1988)). In language similar to the federal statute, the Virgin Islands Legislature has given this Court jurisdiction to hear appeals from "final

---

[21] We have previously applied a rule similar to the federal rule, though without the explanation we provide here as to why the same rule should apply. *See In re People of the V.I.,* 49 V.I. 297, 309 (V.I. 2007) (implying that a contempt order is final by declining to grant mandamus because the petitioner could obtain relief by refusing to comply with a court order, standing in contempt, and immediately appealing the contempt citation) (citing *In re Flat Glass Antitrust Lit.,* 288 F.3d 83, 91 (3d Cir. 2002)); *see also In re Najawicz,* 52 V.I. 311, 326-27 (V.I. 2009) (deciding that because a show cause order was not an order of contempt, it lacked the finality necessary for appellate review).

judgments, final decrees and final orders." 4 V.I.C. § 32(a). Therefore, consistent with our holding in *Pratt*, we may refer to federal court decisions as a basis for analyzing whether a contempt order is "final" within the meaning of section 32(a).

■ Guided by these decisions and the principles stated therein, we conclude that an order finding contempt against an attorney who is not a party to the underlying litigation is immediately appealable. *See United States Catholic Conf.*, 487 U.S. at 76 ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned . . . notwithstanding the absence of a final judgment in the underlying action."); *E. Maico Distribs., Inc. v. Maico-Fahrzeugfabrik, G.M.B.H.*, 658 F.2d 944, 949 (3d Cir. 1981) (noting that "[i]n civil contempt proceedings . . . against a non-party, even against an attorney to or an officer of a party, an appeal generally need not wait until a final judgment in the case as a whole"); *East End Taxi Servs.*, 411 Fed. Appx. at 499. Because Rogers appeals from an order of contempt, and because he is a non-party to the action below, we have jurisdiction over this appeal.

The standard of review for our examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). We review the trial court's decisions adjudging contempt for abuse of discretion. *In re Najawicz*, 52 V.I. at 328 (applying the abuse-of-discretion standard in the context of a civil case); *In re Solomon*, 465 F.3d 114, 117 (3d Cir. 2006) (reviewing a criminal contempt order under an abuse-of-discretion standard). According to this standard, we will uphold factual findings in the absence of clear error, but will review legal questions *de novo*. *In re Solomon*, 465 F.3d at 117-18.

## B. Rogers Was Held in Criminal Contempt and Civil Contempt.

■ It is clear that the Superior Court has both statutory and inherent power to compel obedience to its orders by way of contempt. V.I. CODE ANN. tit. 4, §§ 243(4); 281; *In re Kendall*, 55 V.I. 888, 897 (V.I. 2011). Rogers argues, though, that the court imposed upon him a criminal contempt sanction without the requisite due process protections. To resolve this issue, we must first decide whether the contempt orders were criminal or civil in nature, or both. *See Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 896 (3d Cir. 1992) (noting that a court may impose

both civil and criminal sanctions simultaneously, when it wishes to both compel compliance and punish disobedience).

■ The key distinction between civil and criminal contempt is the court's purpose underlying its exercise of the contempt power. *Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139, 51 V.I. 1253 (3d Cir. 2009) (quoting *Taberer*, 954 F.2d at 896). *But see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1988) (recognizing that the "stated purposes of a contempt sanction alone cannot be determinative"). If the court seeks to coerce someone to do something or to compensate a party, the contempt is typically considered civil in nature. *Berne*, 570 F.3d at 139. On the other hand, if the court seeks to vindicate its own authority through punishment, it is considered criminal contempt. *Id.* The distinction matters, for " '[c]riminal contempt is a crime in the ordinary sense,' and 'criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings.' " *Bagwell*, 512 U.S. at 826 (quoting, respectively, *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), and *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988)) (describing some of the protections that may be required in a criminal contempt proceeding, including the assistance of counsel, the prohibition on double jeopardy, the right to present a defense, the privilege against self-incrimination, and the burden of proof beyond a reasonable doubt).

■ There is another species of contempt, though, that may be either civil or criminal: summary contempt. The statutory authority for summary contempt is found in section 581 of title 14 of the Virgin Islands Code. Although section 581 does not mention "summary" or "direct" contempt, the Third Circuit, when interpreting the federal counterpart, stated that the statute is meant to describe conduct that may be punished summarily. *Pratt*, 50 V.I. at 322 (considering the language of a virtually identical federal statute to interpret the local statute). It is likely, then, that the Legislature intended section 581 — which is modeled after the federal statute[22] — to also provide categories of direct contempt that may be punished in a summary fashion. Section 581 states:

---

[22] The federal statute provides:

> A court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as —

Every court of the Virgin Islands shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as —

> (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) misbehavior of any of its officers in their official transactions; or
>
> (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

14 V.I.C. § 581.[23]

The Superior Court implemented a procedural rule to address summary contempt. Rule 138 states

> A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. The order of contempt shall recite the facts and shall be signed by the judge and entered of record after the defendant is given an opportunity to be heard.

SUPER. CT. R. 138.

---

> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (2006 & Supp. IV 2010).

[23] There are a number of statutes addressing contempt in the Virgin Islands, implemented at various points in our Territory's history. *See, e.g.,* 4 V.I.C. § 244 (providing that anyone willfully refusing to observe a lawful order of the court is guilty of contempt and may be punished); 4 V.I.C. § 281 (giving judges the power to compel obedience to their orders); 4 V.I.C. § 282 (permitting a judge to punish for contempt, based on section 281); 14 V.I.C. § 581 (listing types of criminal contempts, which may be punished by fine or imprisonment, though the Third Circuit has interpreted a similar federal statute on which the section was based to constitute a list of kinds of criminal contempt that may be punished summarily); 14 V.I.C. § 582 (providing that if a contempt is based on an act which itself is a crime, the contempt may be punished as well); 14 V.I.C. § 583 (providing for jury trials for section 582 violations); and 14 V.I.C. § 584 (limiting sections 582 and 583).

In this case, there were two sets of sanctions in each underlying matter. First, in its October 25, 2010 orders, the Superior Court sanctioned Rogers $25 in each of his two cases for his non-appearance at the hearing on October 21. Second, it warned Rogers that he would be fined $25 for each day between October 22 and October 28 if he failed to appear at the October 28 hearing.

As to the first type of sanction, the court ordered that the fines for failure to appear at the October 21 hearings, totaling $50, be paid into the registry of the court immediately. Typically, this kind of fine would constitute a criminal contempt sanction. Like the fines to be paid in *East End Taxi Services*, these fines were retrospective and could not be purged; they had to be paid into the registry of the court, rather than to the opposing party; and they were not based on any factual determination of the damages suffered by the opposing party on account of Rogers' non-appearance. *See* 411 Fed. Appx. at 499 (applying some of the factors that indicate that a sanction is criminal, rather than civil, in nature) (citing *Bagwell*, 512 U.S. at 827).

 However, although the sanctions were criminal in nature, we find that they fall within the type of sanctions that may be punished summarily. *Bagwell*, 512 U.S. at 827 n.2 (observing that for direct contempts, which may be "adjudged and sanctioned summarily," "the traditional distinction between civil and criminal contempt proceedings does not pertain"). There is no question but that Rogers disobeyed an order of the court and, as explained below, the order was lawful. Therefore, the sanctions fall within the ambit of section 581(3). Furthermore, imposing summary contempt sanctions for a failure to appear is consistent with Superior Court Rule 138, which punishes the failure to appear if subpoenaed or summoned.[24]

Some courts, interpreting Federal Rule of Criminal Procedure 42(b) and other applicable authorities, have decided that summary contempt cannot be imposed as a result of an attorney's non-appearance,

---

[24] Although an order of the court is not typically considered a subpoena or a summons, Rule 138 clearly demonstrates an intent to punish a non-appearance after the contemnor is notified of her obligation to appear. Indeed, Black's Law Dictionary defines "subpoena" as "A writ *or order* commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply." BLACK'S LAW DICTIONARY 1563 (9th ed. 2009) (emphasis added). Here, Rogers undeniably received an order to appear before a court subject to a penalty for failing to comply.

concluding that a non-appearance cannot, by definition, occur in the presence of a court. Even if that is the undeniable conclusion of reading Federal Rule 42(b) and these other authorities, and it is not at all clear that it is,[25] the rule differs in the Superior Court. Federal Rule 42(b) would only apply through Superior Court Rule 7, which permits the application of the Federal Rules only when they are not inconsistent with Superior Court rules. Here, Federal Rule 42(b) limits summary contempt to cases in which the "judge saw or heard the contemptuous conduct and so certifies." As noted above, Superior Court Rule 138 is broader, and also permits summary contempt if a person ignores a subpoena or summons. Therefore, because Superior Rule 138 provides for a summary procedure in circumstances that the federal rule does not, caselaw interpreting Federal Rule 42(b) is of limited application. For this reason, we expressly decline to follow the holding of cases to the contrary, such as *In re Horton*, D.C. Misc. App. No. 2000/009, 2003 U.S. Dist. LEXIS 3054, at *8 (D.V.I. App. Div. 2003) (interpreting Superior Court Rule 138 and Federal Rule 42 and, relying only on *Gov't of the V.I. v. Santiago*, 35 V.I. 130, 137-38, 937 F. Supp. 1157 (D.V.I. App. Div. 1996), stating that all summary contempts must occur within the court's presence) and *Santiago*, 35 V.I. at 137-38 (deciding that Superior Court Rule 138 does not permit summary contempt procedures if the contempt was not committed within the actual presence of the court, but failing to discuss the clause of Rule 138 regarding failures to appear after being summoned or subpoenaed).

---

[25] *See United States v. Baldwin*, 770 F.2d 1550 (11th Cir. 1985) (approving the summary disposition of criminal defendant where attorney refused to appear at a hearing because of a religious holiday); *Sykes v. United States*, 444 F.2d 928, 929, 144 U.S. App. D.C. 53 (D.C. Cir. 1971) (noting the "substantial disagreement" about whether non-appearances occur within the presence of the court, and applying local courts' interpretation of the statute that they do, as the local courts adequately protected contemnors' due process rights through the use of show cause hearings); 17 AM. JUR. 2D *Contempt* § 73 (nothing that while an attorney's absence alone does not constitute contempt, the failure or inability of that attorney to provide a valid excuse supports a finding of contempt) (citing, *inter alia, United States v. Ferm*, 547 F. Supp. 33 (N.D. Ill. 1982) (deciding that an attorney who receives notice of a sentencing hearing, but does not attend, and at a subsequent hearing refuses to provide an explanation for the initial non-appearance, has committed contempt and may be dealt with summarily, and noting that because witnesses who fail to appear pursuant to a subpoena can be found in contempt, attorneys who are "schooled in their obligations to the court" should not be held to a lesser standard)).

■■■ Furthermore, those state and federal cases that disapprove the use of summary contempt in circumstances of a non-appearance have emphasized the lack of due process protections for the alleged contemnor. *See Murphy v. State*, 46 Md. App. 138, 416 A.2d 748, 755 n.8 (Md. Ct. Spec. App. 1980) (observing that courts which decided that an attorney's non-appearance is not within the presence of the court were "chiefly concerned that the contemnor be afforded due process in the form of an opportunity to explain his absence"). Where, however, a court issues an order to show cause first, providing the attorney with notice of the charges, a reasonable amount of time to prepare a defense, and the opportunity to appear in open court to answer the charges, courts have found — and we now decide — that summary contempt mechanisms are permitted. *See, e.g., Sykes v. United States*, 444 F.2d 928, 930, 144 U.S. App. D.C. 53 (D.C. Cir. 1971) (approving summary contempt for an attorney's non-appearance); *Kandel v. State*, 252 Md. 668, 250 A.2d 853, 855 (Md. 1969) (finding that an attorney's due process rights were not violated where he was summarily held in contempt, but was given an opportunity to present reasons for his tardiness).

Here, the Superior Court issued an order to show cause before imposing any contempt sanctions. It gave Rogers adequate time to prepare a defense.[26] Furthermore, it is quite likely the court would have permitted him to obtain counsel, if he requested it. He did not. Because he had notice, time to prepare, and an opportunity to present his defense, the contempt findings do not implicate the due process concerns that often militate against the imposition of summary sanctions.

■■■ We therefore conclude that the $25 fines imposed for Rogers' non-appearance at the October 21 hearings constitute summary contempt sanctions authorized by Superior Court Rule 138 and section 581(3) of title 14 of the Virgin Islands Code, because the contempt involved disobedience of a lawful writ, and because the Superior Court took care to preserve Rogers' essential due process rights. *See, e.g., In re Niblack*,

---

[26] Rogers was given a week to prepare for the October 21 show cause hearing, three days to prepare for the October 28 show cause hearing, and two weeks to prepare for the November 18 show cause hearing. Under the circumstances of this case, even three days was a sufficient amount of time to prepare a defense, as Rogers himself knew why he did not appear at the September 9 and October 21 hearings; he did not need to perform any factual investigation or gather evidence. Furthermore, he never requested an extension of time to prepare his defense.

476 F.2d 930, 933, 155 U.S. App. D.C. 174 (D.C. Cir. 1973) (confirming that an attorney's non-appearance, after notice pursuant to a lawful order, constitutes criminal contempt under the federal counterpart to section 581). We will, therefore, affirm the court's decision to impose the sanctions.[27]

■ The per diem fines imposed present a different question. Civil contempt may be coercive *or* compensatory. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 91 L. Ed. 884 (1947). If a fine is coercive instead of compensatory, the contemnor must retain the ability to purge the contempt. *Bagwell*, 512 U.S. at 829. Per diem fines typically coerce a contemnor, permitting the contemnor to "purge" the contempt by conforming to the court's directive.

■ Here, the Superior Court informed Rogers on October 25, 2010, that he would be fined $25 for every day between October 22 and October 28 if he did not appear at the October 28 hearing. He did not appear and was fined $500 in each case.[28] Although the fine was not compensatory and was paid into the registry of the court, rather than to the opposing party, its purpose was clearly to compel Rogers' attendance at the next hearing. Rogers could have purged the contempt and avoided the fine by appearing at the October 28 hearing. Importantly, he "carrie[d] the keys of his prison in his own pocket." *Bagwell*, 512 U.S. at 828 (internal quotation marks omitted).

Furthermore, like other kinds of direct contempt, the contempt here implicated the ability of the court to administer justice by preventing it from proceeding with the September 9 hearing, and by requiring it to expend scarce judicial resources to hold three show cause hearings on October 21, October 28, and November 18. *Bagwell*, 512 U.S at 837

---

[27] Because Rogers does not raise the issue, we need not address whether the evidence was sufficient to find that he acted willfully, as required by section 244 of title 4. 4 V.I.C. § 244 ("Any person who wilfully violates, neglects or refuses to observe or perform any lawful order of a court shall be guilty of contempt of court and upon being found guilty of such contempt may be punished as provided by law.").

[28] The court did not impose the $500 sanction at the October 28 hearing. Instead, it gave him another opportunity to show cause on November 18. When Rogers did not appear at the November 18 hearing, the court imposed the sanction. It is not clear how the $500 fine was calculated. If Rogers was fined $25 a day from October 22 to October 28, inclusive, the fine would be $175. If he was fined $25 a day from October 22 to November 18, inclusive, the fine would be $700. However, Rogers does not challenge the amount of the fine and therefore waives his right to object to it.

(considering whether the sanctions "implicate[d] the court's ability to maintain order and adjudicate the proceedings before it"). Furthermore, it involved a simple act — nonappearance — that did not require the court to perform extensive fact finding. *Contra, id.* (finding the contempt to be criminal in nature because, in part, it involved fines for "widespread, ongoing, out-of-court violations of a complex injunction"). Finally, the $500 fines were not serious. *Contra, id.* (deciding that sanctions totaling over fifty-two million dollars were serious). Therefore, there was less need for a neutral factfinder and adjudicator. *Contra, id.* at 834 (noting that out-of-court contempts requiring substantial factfinding for serious violations involve a substantial "risk of erroneous deprivation from the lack of a neutral factfinder" and therefore call for criminal procedural protections). For these reasons, we find that the per diem fines were civil in nature.

### C. The Superior Court Was Not Required to Rule on Rogers' Motion to Disqualify Before Issuing a Show Cause Order

 Rogers argues that his failure to appear before the Superior Court was justified, and that, therefore, the contempt order was improper. In support of that contention, he notes that the Superior Court proceeded with the September 9 hearings despite the pendency of the motions to disqualify. (Appellant's Br. 8 ("In Walters v. Walters, counsel refused to appear until his motion to disqualify had been ruled upon. In Malbrance [sic] v. Dawson, Appellant refused to appear until the motion to withdraw and disqualify had been ruled upon.").) This argument is unavailing, however. Regardless of whether the Superior Court had ruled on the Motion to Disqualify, or if it had ruled against Rogers on that Motion, he was still required to appear. *L.L. v. Vineland Bd. of Educ.*, 177 Fed. Appx. 244, 246 (3d Cir. 2006) (unpublished) (deciding that a party's recusal concerns do not justify a failure to appear).

 Rogers had other options, aside from contempt, that he could have pursued. He could have waited until the matter was appealed after a final judgment and raised the issue of disqualification on appeal. Alternatively, he could have attended the hearing and raised his arguments before the trial court judge. What he was not permitted to do, however, was to employ the self-help method of disengaging himself from the case process altogether, preventing his client from obtaining the necessary representation at the hearing, and thereby disrupting the legal process. We

conclude that the Superior Court's "failure" to rule on the Motion to Disqualify before the hearing does not justify Rogers' failure to appear.

## D. The Superior Court had Jurisdiction on November 18, 2010, to Issue the Contempt Order and Fine

 Rogers argues that his November 18, 2010 Notice of Appeal divested the Superior Court of jurisdiction. It therefore lacked jurisdiction, he argues, to proceed with the November 18 hearing and to issue the ensuing written order finding him in contempt. It is true that an effective notice of appeal of a final order typically divests the trial court of jurisdiction. *See In re Burke*, 50 V.I. 346, 351 n.1 (V.I. 2008). But here, the Notice of Appeal was filed on the same day of the show cause hearing. It was at the November 18 hearing that the court found Rogers in contempt. It stated in open court that the court was imposing a $500 fine on Rogers in each of the two underlying cases. Notably, the Notice of Appeal was filed *after* the hearing began.[29] Therefore, the Superior Court had jurisdiction to declare Rogers in contempt on November 18 and impose the $500 sanction in each case.

## E. Rogers Was Not Denied Due Process

Finally, Rogers argues that he was denied due process of law because the Superior Court judge who ultimately found him in contempt was "enmeshed in cases before her." (Appellant's Br. 19.) He argues that Judge Thomas's bias against him is evident. To support this conclusion, he provides a list of "facts,"[30] none of which would support a finding that

---

[29] The show cause hearing for both *Malbranche* and *Walters* was scheduled to begin at 9:30 a.m. and the Notice of Appeal was not filed until 9:51 a.m.

[30] First, he states that the judge refused to rule on the Motion to Amend in the *Walters* case. However, Rogers makes no attempt to show how this shows a bias against him, rather than his client. (Moreover, it is not at all certain that a failure to rule on a motion, without more, demonstrates bias even against the client himself.) Second, he states that it took "many months and several motions" for opposing counsel to withdraw. But this fact only shows that the court was slow to rule on motions in general; the fact that opposing counsel also faced difficulties obtaining a timely ruling weighs strongly *against* a conclusion of bias. Third, Rogers argues that his Motion to Withdraw was denied before Judge Thomas was assigned to the matter and was mailed to him, rather than being placed in his mailbox. It is completely contrary to common sense to argue that an unfavorable ruling by one judge shows bias by a newly assigned judge. Furthermore, it boggles the mind how the choice by the clerk's office to mail a copy of an order to Rogers shows bias on behalf of anyone, let alone the judge.

the trial judge was biased against Rogers personally so as to require her to recuse herself from his contempt proceeding.

██ Rogers did file a Motion to Disqualify in the trial court on September 9, 2010. However, he filed it less than an hour before he was required to appear at the hearing. At the October 21 hearing, the court indicated that it would have addressed pending motions at the hearing had Rogers appeared. (App. 24.) As noted above in Part II.C., Rogers had an obligation to appear on behalf of his client, notwithstanding the Motion to Disqualify. Furthermore, because the Motion was based on an accusation of bias, the court may well have needed to take evidence in order to form a decision on the Motion. Because Rogers refused to appear at the September 9 hearing — indeed, and at all subsequent hearings — the court never had the opportunity to develop the factual bases of the Motion. Rogers effectively abandoned his case for disqualification by walking away from the process. In fact, the Motion for Disqualification never suggested that Judge Thomas was biased against Rogers, but only concluded — in sweeping and unsupported statements[31] — that the judge was biased against his client. Because Rogers has failed to demonstrate either below or on appeal that Judge Thomas is biased against him, he was not denied due process by her finding of contempt and order imposing sanctions against him.

---

Fourth, Rogers argues that opposing counsel filed a domestic violence complaint against Rogers' client. Again, even the most generous reading of Rogers' brief does not indicate how this demonstrates bias on behalf of a judge. Fifth, Rogers argues that a debt action filed by his client was assigned to Judge Hollar, who requested the divorce file. Rogers finds fault with the fact that Judge Thomas did not schedule his divorce case for a status conference until after the debt action was resolved. But Rogers never asked for a conference on behalf of his client, and it was his client who initiated the debt proceeding in the first place. Finally, he argues that the fact that Judge Thomas sought to have the divorce proceeding mediated while the show cause was pending demonstrates bias. But, yet again, there is no argument that could possibly support the conclusion that a court-ordered mediation for his client's divorce matter shows that Judge Thomas was biased and unable to fairly adjudicate the contempt matter.

[31] For example, the Motion states that "[i]t is obvious that Judge Hollar and Judge Thomas, who are the judges in the debt action and divorce actions[,] are acting in concert." (App. 67.) In support of this conclusion, he notes that the two judges attend the same church and "do missionary work together." (*Id.*) He further alleges that Judge Thomas "has willfully refused to set a trial date based upon ex-parte communications between the court and Elvira Walters." (*Id.*) He also says that "[t]here is an absolute certainty that Judge Thomas is based [sic] against the defendant." (App. 68.)

## III. CONCLUSION

The $25 retrospective sanctions were imposed for direct contempt, which may be punished summarily under title 14, section 581, of the Virgin Islands Code and Superior Court Rule 138 where an attorney fails to appear at a hearing and refuses to provide a legitimate explanation for that failure. The per diem sanctions were civil in nature and the court's imposition of them did not violate due process. Further, the court had jurisdiction to impose the sanctions despite the filing of a Notice of Appeal in each case. Finally, Rogers' failure to appear was not excused simply because there was a pending motion to disqualify the trial court judge. For these reasons, we affirm.